## FRANKLIN FIRE INS. CO. v. SHADID.

### No. 3666.

Court of Civil Appeals of Texas. Amarillo. Dec. 2, 1931.

Rehearing Denied Jan. 20, 1932.

Leachman, Gardere & Bailey and W. H. Neary, all of Dallas, for appellant.

A. A. Ledbetter, of McLean, for appellee.

RANDOLPH, J.

This is an appeal from the county court of Gray county. It appears from the record and from the amount in controversy that the case was an appeal to that court from the justice court of Gray county. There is no regularly certified transcript from the justice court shown in this case. It is true that there is a copy of the citation in the case filed in justice court, Precinct No. 5 of Gray county, and the return of the constable of that precinct, showing service of the same, but there is no certificate of the justice attached showing a complete transcript from the records of his court.

The plaintiff recovered judgment in the county court, from which an appeal has been taken to this court. There is no appeal bond shown in the transcript from the justice court to the county court, and the county court, so far as this record is concerned, had no jurisdiction to try same; consequently this court has no jurisdiction to entertain this appeal. Ringgold v. Graham (Tex. Com. App.) 13 S.W.(2d) 355, and authorities therein cited.

The statutes of Texas provide for an appeal from a money judgment in the justice court, as follows:

Article 2456 (Rev. St.). Appeal bond. "The party appealing, his agent or attorney, shall within ten days from the date of the judgment, file with the justice a bond, with two or more good and sufficient sureties, to be approved by the justice, in double the amount of the judgment, payable to the appellee, conditioned that appellant shall prosecute his appeal to effect, and shall pay off and satisfy the judgment which may be rendered against him on appeal. When such bond has been filed with the justice, the appeal shall be held to be thereby perfected and all parties to said suit or to any suit so appealed shall make their appearance at the next term of court to which said case has been appealed without further notice."

An appeal bond, where one is required by law, is essential to the jurisdiction of the appellate court, and where one is given that is defective, and not in compliance with the

statutory requirements, no jurisdiction is vested in the court appealed to. Halloran v. Texas & N. O. Ry. Co., 40 Tex. 466; Munzesheimer.v. Wickham, 74 Tex. 638, 12 S. W. 751; McCarthey v. North Texas Loan Co. (Tex. Civ. App.) 101 S. W. 267; St. Louis, etc., Ry. Co. v. Warren Bros. (Tex. Civ. App.) 109 S. W. 1144.

There being no transcript duly certified to in the record showing the proceedings in the justice court, including the judgment, and no appeal bond, for the appeal to the county court being shown in the record in this court, the county court had no jurisdiction.

■ The question here presented is: Did the county court of Gray county have jurisdiction of the appeal from the justice court? This must be made to appear by a filing in due time in the county court of Gray county of such certified transcript from the justice court, including a copy of the judgment of that court and also the filing of an appeal bond from the justice court in that court.

■ If such were filed in due time in such county court, but were omitted from the transcript, then such omission may be supplied by certiorari. If such justice court records are not on file in the county court, then that court had no jurisdiction, and the appeal to this court will be dismissed.

We therefore withdraw the submission of this case in order to give appellant until November 25, 1931, time in which to correct the record in this cause, and, in the event such certiorari is not filed and said records produced in a supplemental transcript in this court, this appeal will be dismissed.

The clerk of this court will therefore issue notice to the attorneys for appellant in this cause, and the attorneys for appellee in this cause, notice that this correction must be made within the time indicated above, and the resubmission of this case is ordered for November 25, 1931.

### On Further Hearing.

This case was filed in the justice court of Gray county by appellee as plaintiff, to recover on an insurance policy against the appellant as defendant. Judgment by that court in favor of the plaintiff, and the defendant appealed from such judgment to the county court of Gray county. On a trial de novo in the county court, judgment was again rendered for the plaintiff, and, from that judgment, the defendant has appealed to this court.

There is no statement of facts filed with the record herein, but the county judge has filed his findings of fact and conclusions of law, which are as follows:

### "Findings of Fact.

"On the 25th day of February, 1930, the defendant issued its regular policy of fire insurance to W. W. Shadid in the sum of $2,-500.00, insuring him against loss or damage by fire, the residence described in plaintiff's petition herein, and in the sum of $1,000.00 against loss or damage by fire to the household effects, including wearing apparel of the said W. W. Shadid and family; said policy contained the usual and customary provision:

" 'This entire policy shall be void if — interest of the insured in the property be not truly stated herein';

"Also,

" 'This entire policy, unless otherwise provided in agreement endorsed herein or added thereto shall be void, if the interest of the insured in the property be other than unconditional and sole ownership.' "

"That on the 25th day of February, 1930, and since 1917, and on up to the 8th day of November, 1930, the said W. W. Shadid was unmarried and lived in the house covered by the policy of insurance, and the title of which was in his name; that during all of said time there also lived in this house Ed Webba, his wife and children (Ed Webba was brother of W. W. Shadid), and two unmarried sisters of W. W. Shadid—one of whom was over 21 years of age and one under 21 years of age; that a dry goods and grocery store was operated in the name of W. W. Shadid, and all of the members of the household, except the small children of Webba, worked in the store and lived out of the store, no separate account being had of the merchandise used by the different members of the household and no separate charge being made for board, lodging or food. That prior to 1917, when the World War started an elder brother of W. W. Shadid occupied the same position with respect to the household as has W. W. Shadid since 1917; that is, he was the managing head of the household, and business, and all business was conducted in his name; all supplies, wearing apparel and other household expenses were paid by him out of the business, and when he went to the War this same position has been held by W. W. Shadid, as his brother did not return from the War.

"That at the time the insurance policy was taken out the said W. W. Shadid intended to insure the wearing apparel of all the members of the household, and all of the members of the household so understood, but this understanding was not communicated to the insurance company at the time the policy was written.

"That on the 8th day of November, 1930, there was a fire in the house, and the damage to the house on account of this fire was $7.50; certain wearing apparel belonging to different members of the household was destroyed by the fire, the different items being as follows:

"(a) One suit of clothes of Ed Webba and clothing of his children, the total damage to these items being $81.50;

"(b) Dresses belonging to the adult sister of W. W. Shadid were destroyed and the value was $10.00;

"(c) Dresses belonging to the minor sister of W. W. Shadid were damaged, the damage being $25.00.

"That after the 8th day of November, and before the filing of this suit on the 26th day of November, A. D. 1930, the defendant denied liability under the terms of the policy for any items of damage except to the extent of $5.00 damage on the residence.

"Conclusions of Law.

"The defendant having denied liability, the plea in abatement should be overruled.

"W. W. Shadid was in law the head of the family, and the policy of insurance as written covered the wearing apparel of all the members of this family, which in turn included all the members of the household.

"If W. W. Shadid was not the head of the entire household, he was the head of the family in so far as he and his unmarried sisters were concerned, and in procuring the insurance he acted for himself and his undisclosed principal, Ed Webba, and was entitled to sue in his own name for the damage sustained by the loss of family wearing apparel of Ed Webba, Mrs. Webba and their small children."

The questions raised by defendant's various propositions are: That the provisions of the policy stipulating that the contract shall be void if the interest of the assured in the property be not truly stated, and if the interest of the insured in the property be other than unconditional and sole ownership, are valid and have the effect of voiding the policy where the assured does not own same, but attempts to insure the personal effects of another, together with his own property.

The plaintiff contends that the provisions above quoted will not void the policy unless the statements or representations made in the policy are material to the risk or contribute to the loss; that a contract of insurance made with an agent in his own name without disclosing his principal, where there is no fraud in connection with the procuring of the contract of insurance, is valid, and that one of a family may insure all of the personal property of the entire family in his own name.

■ Waiving a discussion of the first and last above contentions of plaintiff, we sustain the judgment of the trial court upon the second contention.

In the case of Franklin Fire Insurance Co. v. Britt, 254 S. W. 215, 217, where the father took out insurance in his own name on a car belonging to his son, the Texarkana Court of Civil Appeals says: "Under the law of agency, where an agent * * * acts in his own name, and does not disclose the name of his principal or the existence of an agency, in such case the agent becomes, as to the third person, the real contracting party, and therefore has a right of action on the contract, although the principal may also sue thereon in his own name," citing a number of authorities.

The question before this court is not one of ultimate right to the money recovered, but of the right of appellee to maintain the action. There being no fraud alleged or proved in obtaining the policy, the plaintiff herein has the right to maintain this action and to collect the insurance. Allison Bailey & Co. v. Insurance Co., 87 Tex. 593, 30 S. W. 547.

We therefore affirm the trial court's judgment.